# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-3474

THOMAS W. MCCARTHY,

*Plaintiff-Appellant,*

v.

OPTION ONE MORTGAGE CORPORATION
and BNC MORTGAGE, INC.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 3935—**Joan B. Gottschall**, *Judge.*

———————

ARGUED FEBRUARY 20, 2004—DECIDED APRIL 6, 2004

———————

Before FLAUM, *Chief Judge*, and BAUER and MANION,
*Circuit Judges*.

FLAUM, *Chief Judge.* Plaintiff Thomas McCarthy sued
BNC Mortgage, Inc. ("BNC"), his former mortgage lender,
and BNC's servicer, Option One Mortgage Corporation
("Option One"), alleging that they violated the Illinois
Interest Act, 815 ILCS 205/4, *et seq.*, by assessing him a
prepayment penalty when he paid off his mortgage early.
The district court denied McCarthy's motion for summary
judgment and granted summary judgment to the defen-

dants on the basis that the Alternative Mortgage Transaction Parity Act, 12 U.S.C. §§ 3801, *et seq.* ("Parity Act"), preempts the Illinois Interest Act. For the reasons stated herein, we affirm the judgment of the district court.

## I. Background

After entering into a sales contract for a house in Waukegan, Illinois, Thomas and Sharon McCarthy applied for a mortgage loan. Because the McCarthys' credit report included several adverse notations, their mortgage broker advised them to apply for an adjustable rate mortgage loan. A loan of this type in the amount of $145,800.00 was executed between BNC and the McCarthys. Option One was designated as servicer of the loan. The McCarthys' loan included a prepayment charge if they paid off the loan within two years of its execution. The McCarthys paid off the loan in March 2001, just over one year after the loan was executed. A prepayment charge of $6,376.39 was assessed.

Thomas McCarthy filed a one-count complaint in federal district court, alleging that the prepayment charge violated the Illinois Interest Act. The district court had jurisdiction under 28 U.S.C. § 1332 because the parties to this action are citizens of different states and the amount in controversy exceeds $75,000. The district court granted summary judgment in favor of the defendants based on evidence that the Parity Act preempts the application of the Illinois Interest Act to this case and that the Illinois Interest Act does not apply to servicers such as Option One. McCarthy appeals the decision of the district court.

## II. Discussion

Responding to "increasingly volatile and dynamic changes in interest rates," Congress passed the Parity Act as Title

VIII of the Garn-St. Germain Depository Institutions Act in 1982. 12 U.S.C. § 3801(a)(1). Interest rate volatility had impaired the ability of housing creditors to provide consumers with fixed-term, fixed-rate credit secured by residential property. To better meet consumer demand for credit secured by real property, the Parity Act authorizes non-federally chartered housing creditors to offer alternative mortgages in accordance with federal regulations. Alternative mortgages are mortgages in which the interest rate or finance charge may be adjusted or renegotiated, the debt maturity date may be shortened, or other variations uncommon to traditional fixed-rate, fixed-term transactions are involved. 12 U.S.C. § 3802(1).[1]

Although federally chartered lenders were previously permitted to issue alternative mortgages, many states had laws prohibiting state-chartered lenders from providing this type of credit. The Parity Act's purpose is to "eliminate the discriminatory impact that those [state] regulations have upon nonfederally chartered housing creditors and provide them with parity with federally chartered institutions." 12 U.S.C. § 3801(b). Indeed, the Parity Act provides equal opportunity for state-chartered lenders to offer alternative mortgages as long as they comply with federal regulations. If compliance is achieved, state regulations are preempted by the Parity Act to the extent that they block state lenders from extending credit on terms permitted under federal regulations. *See Ill. Ass'n of Mortgage Brokers v. Office of Banks and Real Estate*, 308 F.3d 762, 768 (7th Cir. 2002); *Nat'l Home Equity Mortgage Ass'n v. Face*, 239 F.3d 633, 636 (4th Cir. 2001); *Shinn v. Encore Mortgage Servs., Inc.*, 96 F. Supp. 2d 419, 423 (D. N.J. 2000). To trigger preemption, lenders must comply with regulations governing federal savings and loan associations, promulgated by the

---

[1] The McCarthys' loan from BNC is considered an alternative mortgage.

Office of Thrift Supervision ("OTS"). 12 U.S.C. § 3803(a)(3). The compliance standard is satisfied if a transaction is in "substantial compliance" with the relevant regulations. 12 U.S.C. § 3803(b)(1).

OTS regulates prepayment penalties and authorizes state housing creditors, like their federal counterparts, to charge prepayment penalties to consumers. 12 C.F.R. § 560.220; *Shinn*, 96 F. Supp. 2d at 423. In contrast, the Illinois Interest Act prohibits prepayment penalties for loans with an annual percentage rate that exceeds 8%. 815 ILCS 205/4(a). As this provision is in direct conflict with the Parity Act, the Illinois Interest Act's prohibition of prepayment penalties is preempted if a non-federal housing creditor elects to be governed by and complies with federal law.

As preemption is an affirmative defense, it is the defendants' burden to establish that BNC substantially complied with the OTS regulations. In this case, summary judgment is appropriate because the defendants have met their burden by demonstrating that BNC is a housing creditor and that it substantially complied with the regulations identified as applicable by OTS in 12 C.F.R. § 560.220: 12 C.F.R. §§ 560.33 [late charges], 560.34 [prepayments], 560.35 [adjustments to home loans], and 560.210 [disclosures for variable rate transaction].[2]

A housing creditor is defined as "any person who regularly makes loans, credit sales, or advances secured by interest in [residential real estate properties]," and who is licensed under applicable state law. 12 U.S.C. § 3802(2). BNC made 4,884 adjustable rate mortgage loans in the year

---

[2] OTS changed the regulations applicable to non-federal housing creditors effective July 1, 2003; 12 C.F.R. § 560.220 now identifies only §§ 560.35 and 560.210 as applicable for state housing creditors.

2000, thus qualifying as a person who regularly makes mortgage loans. BNC holds an Illinois Residential Mortgage License. Accordingly, BNC qualifies as a housing creditor.

McCarthy disputes that BNC substantially complied with issuing the requisite disclosures mandated by § 560.210. Specifically, McCarthy contends that he was not given a Consumer Handbook, as required by 12 C.F.R. § 226.19(b). However, BNC demonstrated substantial compliance with this provision by presenting evidence of (1) procedures in place to ensure compliance with OTS regulations with respect to the Handbook, (2) a cover letter indicating that the Handbook was mailed to McCarthy, and (3) signed acknowledgments of receipt by McCarthy. As previously explained, the defendants do not need to prove that McCarthy actually received the Handbook, but rather that BNC substantially complied with the regulation. The evidence presented by the defendants with respect to the Handbook, particularly the detailed procedures followed by BNC to ensure the that Handbooks are sent to each borrower, is sufficient to show substantial compliance. Besides, evidence of regular office procedures and customary practices of a sender gives rise to a presumption of delivery and this Court has rejected the notion that this type of evidence may be rebutted by a mere denial of receipt. *See Godfrey v. United States*, 997 F.2d 335, 338 (7th Cir. 1993). Accordingly, McCarthy's mere assertion of non-receipt is insufficient to raise a genuine issue of fact as to BNC's substantial compliance with 12 C.F.R. § 226.19(b).

McCarthy does not present any evidence to dispute BNC's substantial compliance with respect to the other OTS regulations. Rather, McCarthy primarily argues that the evidence establishing substantial compliance with these regulations was submitted in violation of Fed. R. Civ. P. 26(a)'s mandatory disclosure requirements. Specifically, McCarthy disputes witness affidavits and an OTS opinion letter that were submitted in response to his motion for

summary judgment. Although McCarthy raised the Handbook issue in response to the defendants' motion to dismiss, he waited until the close of discovery to raise new theories of how the defendants failed to satisfy the OTS regulations. He then sought to bar the defendants from presenting evidence pertaining to the newly raised issues. As McCarthy explained in his brief, his "litigation strategy was to stand back and see if Defendants would come forward with . . . evidence." App. Brief, p. 27. Following this tactic, McCarthy did not make any requests for documents, serve any interrogatories, or take any depositions during discovery.

While parties may pursue their litigation strategies of choice, they must be prepared to accept the attendant risks. In this case, the risk that the district court would deny McCarthy's requests to exclude evidence materialized. It is well-settled that district courts enjoy broad discretion in controlling discovery. *See Leffler v. Meer*, 60 F.3d 369, 374 (7th Cir. 1995). A district court's exercise of discretion on discovery matters will only be reversed upon a showing of a clear abuse of discretion. *Id.* Rule 37 of the Federal Rules of Civil Procedure restrains courts from excluding relevant testimony when a party's failure to disclose a witness is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *see Sherrod v. Lingle*, 223 F.3d 605, 612 (7th Cir. 2000). In denying the defendants' motion to dismiss, the district court stated that McCarthy's "only response to defendants' claim of preemption is that defendants . . . failed to provide him with either the [ARM Booklet] or a suitable substitute." *McCarthy v. Option One Mortgage Corp.*, No. 01 C 3935, 2001 WL 1826284, at *2 (N.D. Ill. Feb. 11 2001). In light of the fact that some issues were not disputed until summary judgment, the defendants failure to initially disclose some evidence appears to have been substantially justified. Accordingly, the district court did not abuse its discretion by not excluding the disputed evidence.

Lastly, McCarthy contends that BNC failed to demonstrate substantial compliance with § 560.35, which requires that any index used for interest rate adjustments must be "a national or regional index." 12 C.F.R. § 560.35(d)(2). McCarthy contends that the defendants have failed to show that LIBOR, the index that BNC uses to adjust interest rates, is a national or regional index. To the contrary, as explained in an OTS opinion letter submitted by the defendants, OTS has found that LIBOR qualifies as a national or regional index for the purposes of § 560.35(d). McCarthy argues that an agency opinion letter such as this one has no legal force. Surely, however, we may consider OTS's interpretation of its own regulation as persuasive authority. In the absence of any evidence indicating that LIBOR is not a national index, we conclude that the OTS opinion letter sufficiently demonstrates BNC's substantial compliance with § 560.35.

In sum, as no issue of material fact exists as to BNC's status as a housing creditor and its substantial compliance with all four OTS regulations, summary judgment was properly granted in favor of the defendants. Since we conclude that McCarthy's claim under the Illinois Interest Act is preempted by the Parity Act, we need not address the defendants' argument that the Illinois Interest Act does not apply to loan servicers.

### III. Conclusion

We AFFIRM the district court's grant of summary judgment to the defendants and denial of summary judgment to the plaintiff.

**A true Copy:**

**Teste:**

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*